IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES MITCHELL,<br>    Plaintiff,<br>v.<br><br>OFFICER CHRISTOPHER LEE<br>HOUSTON, et al.,<br>    Defendants. | §<br>§<br>§  No. 3:10-CV-01803-G (BF)<br>§<br>§<br>§<br>§ |

**Findings, Conclusions, and Recommendation
of the United States Magistrate Judge**

Charles Mitchell ("Plaintiff") filed this suit against Officer Christopher Lee Houston ("Defendant") and three unnamed Dallas Police Department officers. On June 28, 2011, Defendant filed a Motion for Summary Judgment (doc 33). Plaintiff failed to file a response, and the time to do so has expired. For the reasons that follow, the Court recommends that Defendant's Motion for Summary Judgment be GRANTED and judgment be entered in favor of Officer Houston.

**Standard of Review**

Summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes about material facts will preclude the court's granting summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support his motion with evidence negating the non-movant's case. Rather, the movant may satisfy his burden by pointing to the absence of evidence to support the non-movant's case. *Little*, 37 F.3d at 1075. Once the movant meets his burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986)). "[A properly supported summary judgment motion] requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. *See* FED. R. CIV. P. 56(e). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000); *Anderson*, 477 U.S. at 248.

Rule 56(e) permits a proper summary judgment motion to be opposed by the non-movant as set out in FED.R.CIV.P. 56(e). If the party opposing summary judgment does not respond, the court may grant summary judgment if the movant has made a prima facie showing that it is entitled to relief. *Eversly v. Mbank,* 843 F.2d 172, 174 (5th Cir.1988); FED.R.CIV.P. 56(e). Nevertheless, a court may not grant a default summary judgment simply because the non-movant has failed to respond. *Eversly,* 843 F.2d at 174; *Tutton v. Garland Indep. School Dist.,* 733 F.Supp. 1113, 1117 (N.D.Tex. 1990). The court may, however, accept the movant's evidence as undisputed. *United States v. $252, 671.48 in U.S. Currency,* 734 F.Supp. 254, 256 (N.D.Tex.1990); *Tutton,* 733 F.Supp. at 1117. The court must then determine if the movant has made a prima facie showing of its entitlement to summary judgment based upon the movant's undisputed evidence. *Vega v. Parsley,* 700 F.Supp 879, 881 (W.D. Tex.1988).

The Court notes that Plaintiff proceeds in this matter *pro se* and *in forma pauperis.* As part of the *in forma pauperis* screening process, this Court provided Plaintiff with a questionnaire to ascertain more

facts and details surrounding Plaintiff's claims. Plaintiff's answers to those questions were submitted under the penalty of perjury, *see* 28 U.S.C. § 1746, and thus, the Court may rely on them as summary judgment evidence. *See Bookman v. Shubzda,* 945 F.Supp. 999, 1003 (N.D. Tex. 1996). However, as the non-moving party for summary judgment who also carries the burden of proof at trial, Plaintiff has the obligation of outlining specific facts in the record that would create genuine issues of fact causing this Court to deny summary judgment. *See id.* A duty to search the entire record to find evidence supporting the nonmovant's opposition is not imposed upon the district court. *Jones v. Sheehan, Young, & Culp, P.C.,* 82 F.3d 1334, 1338 (5th Cir.1996). Plaintiff's *pro se* status does not absolve him from the duty to set forth specific facts supporting his claims. *See Bookman,* 945 F.Supp at 1004. "There is a point at which even *pro se* litigants must become responsible for the prosecution of their own cases if their claims are to warrant the court's attention."[1] *Id*. at 1005. Because Plaintiff failed to respond to Defendant's Motion for

---

[1] The Court notes that Plaintiff has a history of filing frivolous lawsuits against County officials, police officers, and jailers. A summary of Plaintiff's federal litigation is as follows: (1) January 8, 2007, *Mitchell v. Valdez*, No. 3:07-CV-00036-B; 42 U.S.C. §1983 denial of medical care claim relating to incarceration in Dallas County Jail; Case dismissed as frivolous under 28 U.S.C §915(e)(2) on April 25, 2007; (2) January 8, 2010, *Mitchell v. Cervantes, et al.*, No. 3:10-CV-00030-BH; 42 U.S.C. §983 use of excessive force claim against Officers Cervantes and Dominguez after they filed an incident report against Mitchell, resulting in the loss of his trustee status; Case pending; (3) September 8, 2010 *Mitchell v. Miller-Roach, et al.*, No. 3:10-CV-01762-BK; 42 U.S.C. §983 retaliation claim against Sheriff Valdez, Chief Deputy Lindsey, Captain Sanders, and Officers Roach and Davis; Claims against Valdez, Lindsey, and Sanders dismissed as frivolous under 28 U.S.C. §915(e)(2)(B) on March 1, 2011; Claim against Officer Roach dismissed as frivolous on June 8, 2011; Claim against Officer Davis pending; (4) September 10, 2010 *Mitchell v. Houston*, No. 3:10-CV-01803-BF; 42 U.S.C. §983 claim against Christopher Houston, the victim of Mitchell's aggravated assault in state court conviction F09-60722; Case pending; and (5) September 29, 2010 *Mitchell v. City of Dallas*, No. 3:10-CV-01968-M; 42 U.S.C. §983 claim against Mayor Leppert and Dallas police officers arising from Mitchell's arrest on October 28, 2009 for aggravated assault; Case dismissed as frivolous under 28 U.S.C. §915(e)(2)(B) on February 7, 2011. The Court further notes that on March 1, 2011, Plaintiff accrued his third strike under the Prison Litigation Reform Act, 28 U.S.C. §915(e)(2)(B) and §915(g). Due to his vexatious litigation, Plaintiff is now barred from bringing a civil action or appealing a judgment in a civil action or proceeding *in forma pauperis*

3

Summary Judgment, Plaintiff did not meet his burden of designating specific facts which relate to his claims and would create genuine issues for trial. *See id.* at 1004. In this case, the Court will accept Defendant's summary judgment evidence as undisputed. *See Tutton,* 733 F.Supp. at 1117.

## Undisputed Facts[2]

Plaintiff has alleged that on October 13, 2009, Defendant and three unnamed City of Dallas police officers cut the bolt of his front door and illegally entered and searched his residence at 4727 Frio Drive, Dallas, TX. (Doc. 1, p. 4; Doc. 8, p. 3). Plaintiff alleges that he believed Defendant to be acting under color of state law as he was wearing a "Sheriff Dept. uniform" at the time. (Doc. 32, pp. 4-5). The Court notes that Defendant does dispute this fact, stating in his affidavit that he was not in uniform on that date. (App. 25-26).

In October of 2009, Defendant was employed by the Dallas County Sheriff's Department ("DCSD") as a provisional Detention Service Officer ("DSO"). (App. 2-3, 5, 24-25). Although Defendant is currently a Deputy with the DCSD, he was not a licensed police officer at the time of the events in question and was, instead, employed as a jailer working in the Decker Jail. (App. 3, 24).

Defendant had been hired by the DCSD on August 26, 2009. (App. 2, 5). Because he had not yet completed DSO Academy, Defendant was issued a provisional jailer license under state law on September

---

unless he first shows that he is under imminent danger of serious physical injury. 28 U.S.C. §1915(g).

[2] These facts are taken from the "Undisputed Facts" portion of the Defendant's Motion for Summary Judgment, filed in accordance with Local Rule 56.1(a)(1) of the Northern District of Texas. Plaintiff has not filed a response to Defendant's motion. Consequently, the "Undisputed Facts" contained in Defendant's pleading are admitted for purposes of Defendant's motion for summary judgment. *Gaspard v. Amerada Hess Corp.,* 13 F.3d 165, 166 n. 1 (5th Cir. 1994); *Eversley v. Mbank Dallas,* 843 F.2d 172, 174 (5th Cir. 1988).

8, 2009. (App. 2, 6, 24).  He was assigned to provisional DSO jailer duties inside the Decker Jail. (App. 2, 13).  Defendant completed DSO Academy later that fall, receiving his Jailer License on November 18, 2009. (App. 2, 7, 24).

A DSO is responsible for the supervision and control of inmates during incarceration "within a secure facility of the Dallas County jail system." (App. 2, 9-11). The scope of Defendant's employment during the events in question was limited to duties inside the Dallas County Jail. (App. 2, 25).  Defendant was not working on October 13, 2009 and, at the time, was regularly scheduled off on Mondays and Tuesdays. (App. 3, 13, 25-26).

Plaintiff alleges that his Fourth Amendment rights were violated by the unlawful entry and search of the house, the alleged confiscation of a box cutter, and by being forced from the property by police. Plaintiff also raises a use of excessive force claim against an unnamed Dallas police officer. (Doc. 1, p. 4; Doc. 8, p. 3).  Plaintiff concedes that "Houston never touched him." (Doc. 32, p. 5).

Defendant's contact with the police on October 13, 2009 was that of a citizen seeking assistance after discovering Mitchell had broken into the house at 4727 Frio Drive and barred himself inside.  At the time, Defendant was not acting as a representative of the DCSD or in the scope of his duty as a DSO in the Jail. (App. 3, 25-26).

Plaintiff is Defendant's maternal uncle.  They had a familial relationship prior to the incidents on October 13, 2009. (App. 16, 24).  Defendant and Plaintiff were involved in an ongoing family dispute arising from Plaintiff's break-in and thefts at the house on Frio Drive.

The owner of the property at 4727 Frio Drive is Plaintiff's mother and Defendant's grandmother, Ms. Albert Mitchell.  She became ill in July 2009 and was hospitalized.  She was later transferred to an assisted nursing facility where she was diagnosed with dementia and Alzheimer's Disease. (App. 16 , 25).

5

On September 30, 2009, Ms. Albert Mitchell executed a power of attorney giving her daughter Ms. Ruth Houston, Defendant's mother and Plaintiff's sister, authority over her affairs, including her house on Frio Drive. (App. 17, 22-23, 25). Ms. Houston paid the mortgage and bills on the property. (App. 17).

After Plaintiff damaged the burglar bar lock on the front door during a break-in, Defendant assisted his mother in placing a chain and heavy-duty lock on the front door. (App. 17, 25). Ms. Houston informed Plaintiff, who had recently been released from jail, that he could not stay at the house on Frio Drive. (App. 17). It was her understanding that Plaintiff had been assigned to a half-way home as a condition of his release. (App. 17). She and Defendant also were concerned that Plaintiff would steal things from the property as he had done in the past. (App.17, 25).

On October 13, 2009, Defendant was checking on the house at his mother's request. He discovered that Plaintiff had cut the lock and chain from the front door and replaced the lock with a new lock to which Defendant did not have a key. Plaintiff had barred himself inside the house. Defendant called his mother, who then gave him permission to call the police. She also gave permission for Defendant and the police to force entry into the house in order to remove Plaintiff. (App. 17, 25).

Pursuant to Ms. Houston's verbal permission and the power of attorney in her name, Defendant and the police entered the house. (App. 17, 22-23, 25). The police searched for weapons, and then told Plaintiff to leave. (App. 17, 25). He complied without further incident. (App. 25).

Approximately two weeks later on October 29, 2009, Defendant and his mother discovered that Plaintiff had broken into the house once again. When Defendant confronted Plaintiff, he attacked Defendant with a hatchet. (App. 17, 26). Police arrived at the scene and arrested Plaintiff. Plaintiff was subsequently arrested and convicted of aggravated assault in state court cause number F09-60722. Plaintiff received a seven-year sentence in the Texas Department of Criminal Justice. (App.

6

18, 26).

## Analysis

Plaintiff filed his Complaint as a prisoner under the Civil Rights Act, 42 U.S.C. § 1983 (doc. 1).[3] In his Complaint, Plaintiff alleged that his constitutional rights were violated through an unlawful entry, physical restraint, and search of his residence at 4727 Frio Drive, Dallas, Texas (doc. 1, p. 3-4).[4] 42 U.S.C. § 1983 does not, in and of itself, create a federal cause of action, but instead, provides a remedy for other federal statutory or constitutional violations. *Carbonell v. Louisiana Dep't of Health & Human Resources,* 772 F.2d 185, 188 (5th Cir. 1985). In order to bring a claim under § 1983, a plaintiff must allege a federal statutory or constitutional violation that was committed by a person who was acting "under color of state law". *West v. Atkins,* 487 U.S. 42, 48 (1988).

Here, Plaintiff claimed that his Fourth Amendment rights were violated due to an illegal entry and search of his residence. The Fourth Amendment guarantees the right to be secure from unreasonable searches and seizures, and provides that no warrant shall issue except upon probable cause. *Katz v. United States,* 389 U.S. 347, 357 (1967). The Fourth Amendment protects people, not places. *Id.* at 351. In order to contest the validity of a search under the Fourth Amendment, that person must have standing. *See United States v. Ibarra,* 948 F.2d 903, 905 (5th Cir. 1991). A person has standing if they can demonstrate a reasonable expectation of privacy in the area searched. *Id.* at 905-06 (citations omitted). The following factors are utilized by courts to determine whether a person has a legitimate expectation of privacy:

---

[3] The Court notes that Plaintiff is currently incarcerated due to events occurring on a separate date than those events complained of in his Complaint. (App. 26).

[4] The Court will address the unlawful entry and search claims only, as there is no physical restraint issue since Plaintiff admitted that "Houston never touched him" (doc. 32, p. 5).

>whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy and whether he was legitimately on the premises.

*Id.* at 906.

Here, the undisputed facts show that Plaintiff illegally broke into the home at 4727 Frio Drive and then happened to be inside when the police arrived. (App. 17, 25). Plaintiff did not own the home and did not have permission to be inside the home. (App. 16-17, 22-23, 25). The owner of the house is Ms. Albert Mitchell and she executed a power of attorney to her daughter, Ms. Ruth Houston, which gave Ms. Houston the authority over all of her real estate transactions. (App. 16-17, 22-23). Plaintiff did not live in the home and he had no right to exclude others from the house. (App. 17, 22-23, 25). Ms. Houston never gave Plaintiff permission to go inside the home and instead expressly told him that he could not stay at the house because he had stolen items from the house in the past. (App. 17). Clearly, Plaintiff did not have a possessory interest or reasonable expectation of privacy in the home, and thus, has no standing to claim a Fourth Amendment violation.

Assuming *arguendo* that Plaintiff did have standing to bring a Fourth Amendment claim, this Court still finds that there was no Fourth Amendment violation. The general rule is that a warrant based upon probable cause is required of the government before they can perform a search. *See Katz,* 389 U.S. at 357. A well-known exception to the warrant and probable cause requirement is consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (citations omitted). To demonstrate consent, the government must show that the consent was voluntary and that it was given by someone with the ability to provide such consent. *U.S. v. Jenkins,* 46 F.3d 447, 451 (5th Cir. 1995). A third party may consent to a search provided that party had actual or apparent authority to consent. *United States v.*

8

*Gonzalez,* 121 F.3d 928, 938 (5th Cir. 1997). Actual authority of a third party to consent can be shown by "mutual use of the property by persons generally having joint access or control for most purposes." *Id.* Apparent authority can be demonstrated by showing a reasonable belief that the third party had authority to consent. *Id.*

Here, the undisputed facts show that Ms. Houston gave consent to Defendant and the police officers to enter and search the home at 4727 Frio Drive. (App. 17, 25). Although Ms. Houston did not own the home, she had actual authority to consent to a search of the home because the owner of the house, Ms. Albert Mitchell, executed a power of attorney granting such authority to Ms. Houston. (App. 22-23). The power of attorney was executed on September 30, 2009, prior to the alleged illegal search, and specifically grants Ms. Houston authority over Ms. Mitchell's real estate transactions. (App. 19-23). Ms. Houston voluntarily consented to the search, stating in her affidavit that she initiated the phone call to the Dallas Police Department to request their assistance. (App. 17). The Court finds that the consent to search was valid because it was both voluntary and given by someone with actual authority to consent. Thus, there was no illegal search under the Fourth Amendment.

Generally, the Court must conduct a two-part analysis to determine whether Plaintiff may bring his claim under § 1983. Plaintiff must demonstrate (1) federal statutory or constitutional violation that was committed (2) by a person acting "under color of state law". *See West,* 487 at 49. However, since the Court finds that the first element of a § 1983 claim has not been satisfied, in that there was no federal constitutional violation, there is no need to address the second element.

## Conclusion

Defendant has met its burden of making a prima facie demonstration that it is entitled to judgment as a matter of law because based on the undisputed facts, Plaintiff does not have standing to

claim a Fourth Amendment violation. Further, even if Plaintiff did have standing, there was no unreasonable search under the Fourth Amendment. Because Plaintiff's Fourth Amendment rights have not been violated, he is not entitled to a remedy under § 1983. Accordingly, Plaintiff's claims against Defendant should be dismissed with prejudice.

### **Recommendation**

The Court recommends that Defendant's Motion for Summary Judgment (doc. 33) be **GRANTED**. The District Court should dismiss with prejudice Plaintiff's claims against Defendant, Officer Christopher Houston.

SO RECOMMENDED this 23rd day of September, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE